## MARTIN v. PENNOCK.

The holder of a check, payment of which had been refused for want of funds, passed the same to his vendor, stating, in answer to inquiries, there was nothing wrong about it. *Held*, the suppression of these facts were fraudulent, and a recovery might be had on the original contract of sale.

If a note be taken by a seller of goods, with an agreement that he will endeavour to collect it or return it within two or three months; it does not imply he is bound to proceed to a suit; nor is he liable as for negligence, even though it be shown a recovery might have been had.

ERROR to the Common Pleas of the county of Delaware.

*April* 21, 22.—On the first of July, 1843, Pennock received a check from one Matson, who at the time informed him there were not funds in bank sufficient to meet it, but promised to make a deposit, and Pennock agreed not to present it for a week or two. This check was sent for collection by Pennock, and presented at the bank on the 3d and 11th of July, but was returned unpaid for want of funds.

In the following autumn, plaintiff sold a number of cattle to Pennock, who offered the check in payment. Earl, a witness for plaintiff, stated that, finding it was dated some months before, plaintiff inquired why it had not been collected, and defendant replied there was nothing wrong that he knew of; and that plaintiff said he would take the check and try and collect it, and if he could not, he would return it, in the course of two or three months; and if defendant took the cattle it must be on these conditions. It did not appear that plaintiff ever presented the check at bank. But he offered to return it to defendant shortly after receiving it.

The defendant called a witness, who swore that at the hearing before the justice, defendant asked plaintiff if he did not remember a conversation previous to the purchase, in which he had said he was satisfied to trust Matson for the amount, and that he took the check "for what it was worth, not for what I am worth." Plaintiff replied, He would stick to his bargain.

Defendant gave evidence, showing the check might have been collected, had it been pressed for; Matson himself contradicted this. The justice, being called by plaintiff, stated he had given judgment for plaintiff, on hearing the conversations of the parties. That defendant asserted plaintiff had agreed to take the check for good. Plaintiff replied he might have said so, but not on the day of sale.

The court instructed the jury that the first question for them was, whether the check had been received in payment and satisfaction of the debt, and that if it had been, whether any fraud had been used, in which case plaintiff was not bound by such agreement.

But that if the jury believed the check was taken on an agreement that he would endeavour to collect it, he was bound, without a stipulation to that effect, to use due diligence, and if the money was lost by his neglect he was answerable. And, though it was unnecessary that a demand should have been made at the bank, unless there were funds there; the case, on this view of it, was narrowed to a question of fact— Was Matson solvent, and able to pay at any time while the plaintiff held the check?—if so, the plaintiff could not recover.

*Lewis*, for plaintiff in error. The representations or suppressions of facts, which amount to the same thing, were grossly false, and calculated to deceive the party. It was an assertion that there was nothing wrong about a check which the holder had twice endeavoured to procure payment of and failed. This would have avoided any agreement to receive the note in payment, and it also obviated any duty to endeavour to obtain payment. 1 Com. on Cont. 37; McDowell *v*. Frazier, 1 Doug. 260; Fitzherbert *v*. Mather, 1 T. R. 12; Da Costa *v*. ———, 2 P. Wms. 170; Skinner, 327; Hodson *v*. Richardson, 1 Wm. Black. 465. These considerations show the error of the court on the second main part of the charge. Solvency or insolvency of the drawer was perfectly immaterial and irrelevant, and even had we been bound to collect, it was not by suit but simple demand, already twice made without effect.

*Darlington*, contrâ.—The question of fraud was fairly left to the jury, for there was contradictory evidence, and they have shown by their verdict that plaintiff's witness was disbelieved. As to the court not instructing the jury that the alleged fraud vitiated the whole transaction, there was no prayer for any instruction; and in the absence of that, an omission by the court cannot be assigned for error, Rahn *v*. McElrath, 6 Watts, 151.

*May* 4. KENNEDY, J., after stating the case.—The only testimony given, which tended in any degree to prove what passed between the parties at the time of the purchase of the cattle, and to show the terms upon which the check was received by Martin, was the testimony of Earl. And it must be taken that he was entitled to full faith and credit, as no attempt whatever was made to impeach his veracity, nor any testimony given, tending in the slightest degree to contradict or impugn his evidence in any particular. The suit was originally commenced before a justice of the peace, who gave a judgment in favour of Martin, for the amount of the check, after hearing the allegations of the parties, without any testimony being given on either side. Lewis

Pennock, the brother of the defendant, was present at the hearing before the justice, and was produced as a witness on behalf of the defendant, on the trial of the cause in the Court of Common Pleas, into which it was brought by an appeal from the judgment of the justice. He testified, that on the hearing before the justice, the defendant asked Martin if he did not recollect a conversation at Unionville, before he (the defendant) bought the cattle, in which you (meaning Martin, the plaintiff) stated to me that you knew Westley Matson, and was not afraid to trust him for the amount of the check; and said if he could not pay it in one month, he could pay it in two, if not in two he could pay it in three, and if he could not pay it in three, he could pay it sometime. That Martin replied, "I admit that," but upon a moment's reflection, said, "I will not admit it exactly, either; for," said he, "I always considered you good enough for it." To which the defendant replied, "The day I gave you the check, you took it for what it was worth, not for what I am worth;" to which the plaintiff replied, "he would stick to his bargain;" and this was all the witness recollected about it: but said, further, there was considerable altercation between the parties; that the justice was present: but he did not recollect that Martin said he would stick to his bargain, *and return the check.*

It was argued that this evidence of the brother gave quite a different character to the transaction, from that given by the testimony of Earl, and went to show that the plaintiff had taken the check at his own risk, in full payment of the amount thereof. To my mind, however, it proves nothing of the sort; nor was it evidence which ought to have been considered as having any bearing upon the transaction between the parties; it was not evidence of any conversation that took place at the time the cattle were purchased, and the check given by the defendant to the plaintiff on account thereof: it was evidence of a conversation which, as the defendant himself alleged, took place some time before, but how long, was not mentioned. The testimony of Earl, therefore, stood uncontradicted and unimpeached. But the other testimony given on the part of the plaintiff, when taken in connection with that of Earl's, showed that the defendant did not deal fairly with the plaintiff in giving him the check; that he not only affirmed what was untrue, but suppressed facts in relation to the check which he knew to be true, and which, if he had disclosed to the plaintiff, would most probably have prevented him from taking or receiving it. It appears from the evidence, which is uncontradicted, that the defendant endorsed and passed the check, in a day or two after he received it from Matson, to the Bank of Chester county; that the Bank

of Chester county sent it on immediately for collection, or rather pay-
ment, to the Union Bank of Delaware, but Matson having no. funds
there, with which it could be paid, it was returned on the 4th of July,
1843, the third day after its date, to the cashier of the Bank of Chester
county, unpaid, with the reason of its being so returned. It was sent
a second time by the cashier of the Bank of Chester county, to the
cashier of the Union Bank of Delaware, for payment, on the 11th of
the same month, and returned unpaid, for the same reason, after which
it was given back to the defendant; yet he not only concealed all these
matters from the plaintiff, according to the testimony of Earl, but
asserted, when inquired of by the plaintiff if there was any thing wrong
about the check, and why it had not been collected, as it appeared to
be dated some months before, *that there was nothing wrong about it
that he knew of, and that it was all right.* Now, if the facts and cir-
cumstances thus stated and testified to by the witnesses, and testimony
produced on the part of the plaintiff, be true, of which there seems to
be no reason to entertain a doubt, it is evident that the defendant, with
a view to induce the plaintiff to accept of the check in payment of the
price, or part of the price of the cattle, concealed from him what it
was material for him to have known in respect to the check. He ought
to have told him all that had taken place, and more especially when
he was asked the question, why it was that the check had not been
paid, though some months had elapsed since it was drawn, and whe-
ther all was right in regard to it, instead of saying that all was right,
and that there was nothing wrong about it. In short, it is impossible
to come to any other conclusion, if the testimony is to be believed,
than that the defendant practised a fraud upon the plaintiff, by means
whereof he prevailed upon him to take the check: and certainly no
ground, or good reason, has been shown for doubting the truth of the
evidence on behalf of the plaintiff. And had the court below pre-
sented the case to the jury, as we think they ought to have done, under
the view which has just been taken of it, the jury could have had no
difficulty in finding a verdict for the plaintiff. Instead of doing so,
however, the court below presented it first as a question of fact to the
jury, to decide whether the plaintiff had not taken the check on his
own risk, in absolute payment of the price of the cattle, and if he had
done so, their verdict ought to be for the defendant, unless the defend-
ant had fraudulently induced the plaintiff to accept of it. This, as it
appears to me, was submitting a question of fact to the. jury without
any evidence to raise it: for there is not a particle of evidence that I
can discover in the cause, which tends to prove that the plaintiff took
the check in absolute payment at his own risk; on the contrary, the

testimony of Earl, the only witness present at the making and closing of the contract for the purchase of the cattle, shows most clearly that the check was only taken conditionally. And it is a misapprehension, to suppose that the evidence of Lewis Pennock, the brother of the defendant, tends to prove any thing to the contrary. The only part of his testimony which touches on this point at all, is, that the defendant said to the plaintiff, "The day I gave you the check, you took it for what it was worth;" to which the plaintiff replied, he would "stick to his bargain." It would be strange, indeed, if such a reply as this could be construed into an admission that he had taken the check in absolute payment, at his own risk. The utmost that could be made out of it for the defendant, even if the plaintiff said so, would be, "Do you prove that I agreed to take it for what it was worth, or in absolute payment at my own risk, and I will stick to my agreement." It is very possible that the plaintiff said, "I will stick to my bargain, and accordingly return the check;" but Lewis Pennock, the witness, could not recollect this latter part. But it is perfectly preposterous, to suppose that the plaintiff could have made such admission at the very moment when he was claiming to recover before the justice the amount of the check, in direct oposition to his having ever agreed or consented to take the check for what it was worth at his own risk. The justice was present, too, and heard all that passed, and after hearing all that did pass between the parties, rendered a judgment in favour of the plaintiff, for the amount of the check: a thing that he could not well have done, if the plaintiff had admitted, in any way, that he took the check at his own risk. There was, therefore, not a spark of evidence given from which it could be fairly inferred, that the plaintiff had agreed with the defendant to take the check as payment for the amount thereof, at his own risk; and the court, as we conceive, therefore erred, in submitting that as a questionable fact to the jury, when the testimony all showed that it could not be so. There are some other points raised by the court, in their charge to the jury, upon which they instructed them in a manner which was scarcely warranted by the evidence, as we think; yet we are satisfied that the case, from the evidence, as it was given on trial, must ultimately be determined in favour of the plaintiff on the ground of fraud alone, it would seem to be unnecessary to notice particularly the points just alluded to. There is one of them, however, on which I will say a word or two. The court below seem to have thought, from the evidence, that the plaintiff was bound to have collected the check from Matson, if collectable by any means, during the time he held it, before he offered to return it. Now, if the court meant to say, that he was bound to sue, and to use all possible

means for the recovery of the amount of the check, unless it appeared that Matson was insolvent, and wholly unable to pay, so that the amount of the check could not be recovered from him, it appears to me that this was going too far: for I think it plainly inferable from the evidence, that it was not the understanding of the parties, at the time that the plaintiff took the check of the defendant, that the plaintiff should enforce the payment of it from Matson by suit, if he could not obtain it without. The plaintiff, according to the evidence, was to return the check within two or three months, if he could not get the amount of it from Matson, which was a much less time than might have been requisite to collect it by a legal proceeding. The sum.was such as a justice of the peace could take cognisance of, and if the plaintiff had sued Matson before a justice, and obtained a judgment against him for the amount of the check, Matson, if he were the owner of a freehold estate clear of encumbrances, of sufficient value to be a good security for the payment of the judgment, or if not such a freeholder, he had given good bail for the payment of the judgment, would have been entitled to a stay of execution for *nine* months; so that although perfectly solvent, the money, unless he paid it voluntarily, could not have been obtained or collected of him in two or three months. The impossibility, therefore, of the money, or the amount of the check being collected in any court by suit, provided Matson were solvent, and able to pay, within two or three months, shows clearly that it was not the understanding and agreement of the parties, that the plaintiff should be bound to collect the amount of the check by suit, if he could not obtain payment of it otherwise. The most that he was bound to do in this respect would seem to be, that he was to call upon Matson for payment, and endeavour by this course to get the amount of the check of him in two or three months if he could. This, it appears, he did, but failed to obtain payment, so that, if there were no fraud in the case, he did all that he was bound to do, to entitle him to recover the amount of the check from the defendant, according to the terms of their agreement.

> Judgment is therefore reversed, and a venire facias de novo awarded.